**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Victor Dale THOMAS, Defendant–
Appellant.**

No. 96–5085.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 6, 1997.

Decided April 14, 1997.

Hugh B. Ward, Jr. (argued and briefed), Office of the U.S. Attorney, Knoxville, TN, for Plaintiff–Appellee.

Perry H. Piper (argued and briefed), Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, TN, for Defendant–Appellant.

Before: NORRIS and MOORE, Circuit Judges; RUSSELL, District Judge.*

ALAN E. NORRIS, Circuit Judge.

Defendant, Victor Dale Thomas, appeals the district court's finding that exploding shotgun shells confiscated from his house are "destructive devices" within the meaning of 26 U.S.C. § 5845(f). This finding resulted in a higher total offense level, and therefore a longer term of imprisonment. We affirm.

## I.

On January 20, 1995, Bradley County, Tennessee sheriff's deputies conducted a search of defendant's house, finding, among other items, approximately four pounds of marijuana, eight firearms (including two 12–gauge shotguns), and six exploding 12–gauge shotgun shells.[1] When defendant was interviewed by deputies a few days after the search, he stated that the shells would "blow a hole in a block wall big enough to throw a desk through."

Defendant pleaded guilty to knowingly using and carrying firearms during and in relation to a crime of drug trafficking in violation of 18 U.S.C. § 924(c)(1), and, having previously been convicted of a felony, knowingly and unlawfully possessing firearms in and affecting commerce in violation of 18 U.S.C. § 922(g)(1).

When defendant appeared before the district court for sentencing, the only witness who testified was Joseph Hanlin, an explosives enforcement officer with the Bureau of Alcohol, Tobacco and Firearms. Hanlin testified that he found all six exploding shotgun shells to be similar in design, and that he disassembled and examined one of them. Hanlin considered the shotgun shell or cartridge as just one possible method of delivering the explosive device found inside. He explained that when the cartridge was fired by a shotgun, the device would be expelled from both the cartridge and the shotgun. Upon impact with a hard surface, the primer in the nose of the device would initiate an explosion, fragmenting the device's lead container. Hanlin said the device could also be delivered by hurling it at a target, dropping it off a building to impact with a hard surface, or attaching it to the shaft of an arrow. It could even be affixed to the ground to function as a mine. According to Hanlin, the explosive mixture found inside the device behaves like a high explosive, and high explosives are not a good choice for blowing up tree stumps, the use to which defendant claimed he intended to put the devices.

In Hanlin's opinion, the device, independent of the shotgun shell within which it was contained, was a destructive device, a bomb, as those terms are found in 26 U.S.C. § 5845(f). When he was asked if he had used any reference materials in reaching this conclusion, Hanlin stated that he had looked up the word "bomb" in the dictionary.[2] The

---

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1. Each of the items referred to in this opinion as "exploding shotgun shells" was actually comprised of two parts—the explosive device at issue, and the 12–gauge shotgun shell or cartridge within which it was contained. The explosive device consisted of a lead container and a threaded fin assembly that screwed onto its base.

In the nose of the container was a percussion primer. In the cavity of the container was an explosive mixture which could be ignited if force was exerted on the primer.

2. The definition upon which Hanlin relied defines "bomb" as "a projectile or other device carrying an explosive charge fused to detonate under certain conditions and that is hurled, dropped, or merely set into position at a given

district court concluded that the devices were destructive devices under § 5845(f), "as either bombs or similar devices." It then sentenced defendant to 117 months of imprisonment.

## II.

This court has jurisdiction over defendant's appeal pursuant to 28 U.S.C. § 1291. We review de novo the district court's interpretation and application of a statute such as 26 U.S.C. § 5845. *See United States v. Markwood,* 48 F.3d 969, 975 (6th Cir.1995).

Section 5845(a) defines the term "firearm" as including eight different types of weapons, among them "destructive device[s]." 26 U.S.C. § 5845(a)(8). Section 5845(f)(1) defines destructive device specifically as "any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket ..., (D) missile ..., (E) mine, or (F) similar device."

 Defendant first argues that the exploding shotgun shells were not bombs as contemplated by § 5845(f), but instead should be considered as ammunition, falling under 18 U.S.C. § 921(a)(17)(A).[3] He asserts that they "would more commonly be considered 'ammunition' as compared to a 'bomb.'" However, the district court pointed out that the attributes and uses commonly assigned to ammunition would not apply to these devices.

Defendant cites *United States v. Morningstar,* 456 F.2d 278 (4th Cir.1972), for the proposition that the use for which commercial explosives are intended determines whether they are classified as destructive devices. *Id.* at 281. He claims that he intended to use the shells to blow up tree stumps. Defendant fails to note, however, that the *Morningstar* court pointed out that § 5845(f)(1) deals with explosive and incendiary devices which have no business or industrial utility, and that such devices are classified as destructive devices regardless of their intended use. *Id.* at 280; *see also United States v. Greer,* 588 F.2d 1151, 1156 (6th

Cir.1978) (clarifying that intended use is in fact irrelevant in subsection (f)(1) cases). Hanlin's testimony that the devices in question would not be a good choice for blowing up tree stumps, and that they have no other industrial or social use that he is aware of, supports the conclusion that they were properly classified as subsection (f)(1) destructive devices.

 Finally, in view of the evidence concerning the devices themselves, and defendant's statement concerning their destructive capability, we do not find persuasive defendant's argument that a person of ordinary intelligence would not be put on notice that the devices were "destructive devices."

## III.

The judgment of the district court is hereby **affirmed.**

---

point with varying effects depending upon the type used."

**3.** Section 921(a)(17)(A) states that the term "ammunition" means "ammunition or cartridge cases, primers, bullets, or propellant powder for use in any firearm."