*247 GRIFFIN, Circuit Judge,
dissenting.
I respectfully dissent. While I join the portion of the majority opinion that affirms the denial of defendant’s motion to suppress (Section II, 2), I would reverse defendant’s conviction on the grounds of insufficiency of the evidence.
A defendant challenging the sufficiency of the evidence has a “very heavy burden.” United States v. Chavis, 296 F.3d 450, 455 (6th Cir.2002). “When reviewing an insufficient-evidence claim, this court must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” United States v. Gardner, 488 F.3d 700, 710 (6th Cir.2007). See also Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
When deciding whether any rational trier'of fact could have found the essential elements of the crime, we do not “weigh the evidence, consider the credibility of witnesses, or substitute [our] judgment for that of the jury.” Chavis, 296 F.3d at 455 (quoting United States v. Ferguson, 23 F.3d 135, 140 (6th Cir.1994)). We will reverse a judgment on insufficiency-of-the-evidence grounds “ ‘only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole.’ ” United States v. Barnett, 398 F.3d 516, 522 (6th Cir.2005) (quoting United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984)); United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992). If, however, the evidence is such that a “rational fact finder must conclude that a reasonable doubt is raised, this Court is obligated to reverse a denial of an acquittal motion.” United States v. Lloyd, 10 F.3d 1197, 1210 (6th Cir.1993) (citing United States v. Collon, 426 F.2d 939, 942 (6th Cir.1970)).
To establish a violation of § 841(a)(1), the government must prove the following elements: “(1) knowing (2) possession of a controlled substance (3) with intent to distribute.” United States v. Mackey, 265 F.3d 457, 460 (6th Cir.2001) (quoting United States v. Christian, 786 F.2d 203, 210 (6th Cir.1986)). To prevail on its theory of aiding and abetting, the government bore the burden of proving beyond a reasonable doubt that defendant Jones knew that Wilson possessed the cocaine with intent to distribute and assisted Wilson in a plan to deliver it. United States v. Gardner, 488 F.3d 700, 711 (6th Cir.2007); United States v. Paige, 470 F.3d 603, 609 (6th Cir.2006).
It is well settled that a defendant may not be held criminally responsible solely for being physically present near contraband. Parker v. Renico, 506 F.3d 444, 450 n. 4 (6th Cir.2007) (observing that a defendant’s presence near a firearm is insufficient to establish constructive possession); United States v. Arnold, 486 F.3d 177, 183 (6th Cir.2007) (en banc) (“ ‘Presence alone ’ near a gun ... does not ‘show the requisite knowledge, power, or intention to exercise control over’ the gun to prove constructive possession.”) (quoting United States v. Birmley, 529 F.2d 103, 107-08 (6th Cir.1976)). See also United States v. Conrad, 507 F.3d 424, 434 (6th Cir.2007) (observing that presence near contraband is, by itself, insufficient to support a conviction for aiding and abetting); United States v. Pena, 983 F.2d 71, 73 (6th Cir.1993) (holding that mere presence in a place where drugs were discovered is not enough to sustain a conviction for aiding and abetting in possession with intent to distribute illegal drugs); United States v. Craig, 522 F.2d 29 (6th Cir.1975) (same).
In its attempt to show defendant Jones knew that Wilson possessed cocaine,[1] the *248 government relies upon an unsupported, irrational theory that defendant’s phone call was an attempt to trigger a preplanned escape strategy conceived by him, Wilson, and Jones’s friend Lashawnda Ceasar, in the event defendant and Wilson were arrested on their way to an alleged drug transaction. According to the prosecution, defendant’s plan called for Ceasar to drive to the scene of the traffic stop, and for defendant and Wilson to escape as passengers in Ceasar’s car. In reality, the alleged escape plan played out as follows: as Ceasar approached the site of the traffic stop, she saw a man (Wilson) running toward her car as she stopped to avoid hitting him. Wilson jumped on the hood of Ceasar’s car, shouted “go, go, go!” while Ceasar responded “no, no, no,” before stepping on the gas and departing the scene of the traffic stop, leaving defendant alone to face arrest.
The escape plan theory overlooks significant facts that would cause any rational juror to conclude that the prosecutor’s hypothesis is totally implausible. First, although the government suggests that defendant was so worried about the possibility of being stopped by the police while traveling on Highway 78 that he devised an escape plan before he began his trip, defendant Jones was apparently unconcerned about his plan being discovered. According to Officer Moore, defendant was speaking on his cell phone when Moore returned from checking his driver’s license and did not hang up until he was asked, repeatedly, by Officer Moore. One would expect a drug dealer to begin his escape plan somewhat more secretively, rather than triggering the alleged escape attempt by announcing “they’re coming” in the presence of the police.
Second, and more significantly, the government ignores the facts that Ceasar initially exclaimed “no, no, no” when approached by Wilson and then traveled a mere 400 yards before stopping in a driveway. Wilson then jumped off of the hood of the car, while Ceasar turned around and traveled back towards the police. Defendant’s lack of concern in the privacy of his cell phone call and Ceasar’s verbal response and near-immediate return toward the police are significant actions that are inherently inconsistent with the government’s escape theory. Also at odds with the government’s position is the jury’s not guilty verdict regarding Ceasar.
Finally, it should be noted that when Deputy Moore asked defendant “[d]o you have any drugs or anything in the car that I should know about?” Jones replied “no” and then voluntarily consented to the search of the vehicle.
In relying on the prosecution’s hypothesis, the majority makes two inferences that are not supported by the evidence: first, defendant was calling Ceasar in order to evade a potential arrest; and, second, Jones feared a potential arrest because he knew that Wilson was carrying cocaine. A finding of aiding and abetting may be based on circumstantial evidence, but “a line must be drawn between valid circumstantial evidence, and evidence which requires a leap of faith in order to support a conviction.” United States v. White, 932 F.2d 588, 590 (6th Cir.1991). See also United States v. Reece, 86 F.3d 994, 997 (10th Cir.1996) (“A verdict that is, in fact, *249 based upon a guess or a mere possibility cannot be upheld.”).
Rather than taking these two leaps of faith and accepting the government’s unsupported “what if” theory, I would follow the approach taken by the Tenth Circuit in Reece, which addressed the same issue under substantially similar circumstances. In Reece, the driver and his passenger, Scott Clift, were pulled over for failing to signal a lane change. As one of the police officers approached the passenger side of Reece’s vehicle, he noticed that the passenger was holding two hand-rolled cigarettes and a bag that contained a green, leafy substance. Id. at 995. Clift was removed and searched, revealing 11.28 grams of marijuana and 13.39 grams of crack cocaine in his pockets. A search of Reece revealed no narcotics, but officers found $2,700 in the glove compartment. Id. At trial, Clift testified that the narcotics and cash were his, that he had placed the money in the compartment to hide it from the police, and that Reece had no knowledge of the narcotics or cash. Id.
After the police officers discovered the contraband, Reece and Clift were placed in the backseat of the police cruiser, where their conversation—unbeknownst to them—was recorded. Id The tape of the recording was played at trial, which recorded Reece urging Clift to take responsibility for the drugs and Reece’s question to Clift regarding whether all of the contraband had been discovered. Id Despite Clift’s testimony at trial, Reece was convicted of possession of narcotics with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).
On appeal, the Court of Appeals for the Tenth Circuit held that the evidence offered at trial was insufficient to support Reece’s conviction, holding “our review of the evidence fails to link Mr. Reece to the narcotics in any way other than presence and proximity, let alone show his intent to sell.” Id at 996. The court explained:
The only evidence introduced that could conceivably link Mr. Reece with the narcotics by indicating his knowledge of the presence of the narcotics was the tape recorded conversation in the back of the vehicle. By the time the recording was made, however, it is clear that Mr. Reece was aware that narcotics were found on Mr. Clift, and had indeed seen the narcotics on the trunk of the vehicle following their removal from the person of Mr. Clift. Because constructive possession requires a nexus between the defendant and the contraband where there is more than one possibility as to who is in possession of that contraband, mere dominion over the vehicle and proximity to the contraband will not satisfy the possession element. The government’s case is barren of evidence linking or demonstrating a nexus between Mr. Reece and the narcotics found on Mr. Clift’s person and therefore cannot sustain the conviction and the 262 month sentence.

Id

Similarly, in the present case, no direct evidence was introduced to prove that defendant had any knowledge of Wilson possessing cocaine at the time of the traffic stop. Indeed, there may have been a stronger case for finding possession in Reece than here; in Reece, $2,700 was found in an area of joint control, while all of the cocaine found during the stop at issue in this case was discovered in Wilson’s pockets. Regardless, as in Reece, the government’s circumstantial evidence case is devoid of any evidence demonstrating a connection between Jones and the cocaine found in Wilson’s pocket. “The jury may draw reasonable inferences from direct or circumstantial evidence, yet an inference must amount to more than spec *250 ulation or conjecture.” Id. at 996. In my view, the government’s theory based on Jones’s phone call to Ceasar is no more than pure speculation and conjecture. For these reasons, I would hold that the government’s implausible theory is not supported by substantial and competent evidence and, thus, the evidence was insufficient for any rational juror to find the elements of the crime proven beyond a reasonable doubt.
I respectfully dissent. I would reverse defendant’s conviction.

'. Ironically, Wilson’s motion to suppress evidence of the cocaine, premised on his claim *248 of a Fourth Amendment violation in his pat-down, was granted by the district court and affirmed by this court on appeal. United States v. Wilson, 506 F.3d 488 (6th Cir.2007). Defendant Jones was convicted and sentenced to twenty years of imprisonment based on the same cocaine possessed by Wilson, but suppressed in the government’s case against Wilson.