**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 22, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RIGOBERTO MARTINEZ-HARO, a/k/a
Rigoberto Haro-Martinez,

      Defendant-Appellant.

No. 10-4166

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 1:09-CR-00075-TC-BCW-1)**

---

Submitted on the briefs:

Robert B. Breeze, Salt Lake City, Utah, for Defendant-Appellant

Carlie Christensen, United States Attorney; Michael P. Kennedy, Assistant United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **LUCERO, EBEL,** and **GORSUCH,** Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Defendant-Appellant Rigoberto Martinez-Haro was indicted with two counts of possession with intent to distribute methamphetamine. Before trial, Martinez-Haro's counsel requested that a psychiatric examination be performed on Martinez-Haro to determine his mental competency to stand trial, pursuant to 18 U.S.C. § 4241(b). Dr. O'Connor performed a psychiatric examination and concluded that Martinez-Haro was likely not competent to stand trial. But Dr. O'Connor also recommended more "psychological and neuropsychological testing in Spanish by a Spanish speaking neuropsychologist" to assist the court in making its competency determination and indicated a willingness to revise her conclusion of incompetency based on the outcome of that examination. Therefore, the Government moved for a second competency examination. Martinez-Haro objected, but the district court granted the Government's motion. Martinez-Haro filed this interlocutory appeal challenging the district court's order. For the following reasons, we affirm.[*]

## I. BACKGROUND

A grand jury indicted Martinez-Haro with two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a) and (b). Before trial, the Government notified Martinez-Haro that if convicted he would be subject to a mandatory minimum of twenty years' imprisonment for the first count of the indictment and a

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

mandatory minimum of ten years' imprisonment for the second count. After that,

Martinez-Haro's counsel informed the district court that he had "some questions about

whether [Martinez-Haro] had a mental breakdown." (Aplt. App., vol. II at 9.) So

Martinez-Haro's counsel requested a competency examination under 18 U.S.C. § 4241.[1]

Based on this request, the district court ordered a psychological examination to be

conducted by Dr. Beverly O'Connor, Ph.D.

Dr. O'Connor reviewed relevant records, applied several testing methods, and

conducted a clinical interview with the assistance of an interpreter. In that interview,

---

[1] Section 4241 reads in pertinent part as follows:

(a) Motion to determine competency of defendant.—At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rending him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

(b) Psychiatric or psychological examination and report.—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

Importantly for this case, § 4247(b) states that "[a] psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner." 18 U.S.C. § 4247(b) (emphasis added).

3

Martinez-Haro explained that he was forty-one years old but only had a fifth-grade education. He had a substantial history of drug abuse, a significant criminal history, and was physically abused by his father. Martinez-Haro was also diagnosed with diabetes in 2009 and feared that a twenty-year sentence would be a life sentence for him because the diabetes would prevent him from living that long.

Martinez-Haro also shared his thoughts on the pending criminal charges against him with Dr. O'Connor. Martinez-Haro wanted a plea agreement that would result in a ten-year sentence, and thus "he would just ask for another [a]ttorney" until he got that deal. (Aplt. App., vol. III at 4.) Further, he indicated that the court "should just let him go back to Mexico and he would promise not to come back because he doesn't want to hurt people." (Id.)

Based on this information, Dr. O'Connor concluded as follows (we quote Dr. O'Connor's opinion at length because of its significance to the outcome of this case):

> Does the Defendant presently suffer from a mental disease or defect that renders him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him?
> Yes. Mr. Martinez-Haro appears to be low functioning intellectually and appears to have difficulty with comprehension and abstract reasoning and judgment. Although it is difficult to get a totally accurate assessment of his intellectual functioning with him being tested in English through an interpreter, his IQ test results are in the mild mental retardation range. Given the problems of the language barrier I would judge that his overall IQ is likely in the Borderline Range. Mr. Martinez-Haro appears to have many risk factors for likely organic brain damage including the following: severe physical abuse as a child; long term inhalant use beginning as a child; long term use of methamphetamine and cocaine; multiple mild head injuries; and untreated diabetes. I cannot rule out the possibility that he may have some level o[f] dementia due to these factors, but a

4

neuropsychological evaluation would have to be performed in Spanish to determine this for sure. While the Defendant has a very basic factual understanding of his case, he appears to lack a rational understanding of his case and believes that because he sees himself as being in poor health he should deserve a very low Plea Agreement offer. He also believes that if he keeps requesting new attorneys that one of these attorneys will be able to get him what he is demanding. Alternatively, he also has an almost fantasy belief that the legal system should just let him go back to Mexico if he promises not to come back. While some of this may be due in part to personality or characterological factors, it appears that at this time his difficulty with comprehension, abstract reasoning, and judgment due to his low IQ may likely render him incompetent to the extent that he is unable to adequately understand the nature and consequences of the proceedings against him. His lack of formal education and his level of severe depression also likely interfere with his ability to rationally understand the proceedings against him.

. . .

This is a difficult case to make an absolute statement regarding Mr. Martinez-Haro's competency due to the language barrier and his unwillingness to discuss certain parts of his history or elaborate on some of his stated psychiatric symptoms. However, given the review of the legal records, his clinical presentation, the neuropsychological screening, and the interview with his Attorney, it is my best opinion that Mr. Martinez-Haro currently is likely not competent to stand trial for the charges pending against him in the United States District Court.

If it were possible to have Mr. Martinez-Haro administered some psychological and neuropsychological testing in Spanish by a Spanish speaking neuropsychologist this may give the Court more complete information to base its opinion regarding competency on. If that more extensive testing were in contrast to my current opinion I would be willing to review that material and possibly reconsider my opinion.

(Id. at 6–7 (second emphasis added).)

Because of Dr. O'Connor's equivocations in her conclusion about Martinez-

Haro's competency, the Government filed a motion seeking a second competency

examination under § 4241. Martinez-Haro objected to the request, but the district court granted it over his objection and ordered that Martinez-Haro be committed in a suitable Bureau of Prisons facility for the purposes of this examination. Martinez-Haro now appeals to this Court.

## II. DISCUSSION

### A.

This Court generally has jurisdiction only over appeals from final decisions of the district courts. 28 U.S.C. § 1291. Usually, in criminal cases this rule requires that a defendant await conviction and sentencing before raising an appeal. See Flanagan v. United States, 465 U.S. 259, 263 (1984). The rationale for the final judgment rule includes preserving respect for trial judges, reducing the ability of litigants to harass each other, and enhancing the efficient administration of justice. Id. at 263–64. Based on these rationales, courts of appeals enforce the final judgment rule "with the utmost strictness in criminal cases." Id. at 265. So we depart from the final judgment rule only "when observance of it would practically defeat the right to any review at all." Cobbledick v. United States, 309 U.S. 323, 324–25 (1940).

In Cohen v. Beneficial Industrial Loan Corp., the Supreme Court set forth the criteria that an order must meet to be appealable prior to a final judgment. 337 U.S. 541 (1949). Under the "collateral order" doctrine, a litigant may only seek immediate review of orders that (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) are

6

"effectively unreviewable on appeal from a final judgment." SEC v. Merrill Scott &

Assocs., Ltd., 600 F.3d 1262, 1270 (10th Cir. 2010). This Court previously held that a

district court order committing a defendant for the purpose of a competency examination

meets the Cohen factors and is, therefore, immediately appealable. See United States v.

Deters, 143 F.3d 577, 581 (10th Cir. 1998) (taking jurisdiction under the collateral order

doctrine of an appeal of an order committing a defendant for the purpose of conducting a

psychological examination to determine competency to stand trial, pursuant to 18 U.S.C.

§ 4241(b)); cf. United States v. Boigegrain, 122 F.3d 1345, 1349 (10th Cir. 1997) (en

banc) (per curiam) (taking jurisdiction under the collateral order doctrine of an appeal of

an order committing a defendant for the purpose of determining whether competency to

stand trial was likely to be attained, pursuant to 18 U.S.C. § 4241(d)). As this Court

explained in United States v. Deshazer,

> [T]his court's precedents indicate an interlocutory appeal in the context of pretrial commitment for competency proceedings is permitted because the "disputed question," i.e., the defendant's liberty interest in not being confined during an evaluation, is wholly separate from the merits of the criminal case. That interest cannot be fully vindicated in an appeal from a final judgment.

451 F.3d 1221, 1229 (10th Cir. 2006) (internal citations omitted). Thus, we have

jurisdiction over this appeal under the collateral order doctrine.

**B.**

This Court reviews a district court's interpretation of a statute de novo. United

States v. Becker, 625 F.3d 1309, 1310 (10th Cir. 2010), cert. denied, 2011 WL 721043

7

(June 6, 2011).  But we review a district court's determination of whether to order a competency examination for an abuse of discretion.  United States v. Ramirez, 304 F.3d 1033, 1035 (10th Cir. 2002).

Section 4241(b) provides that "[p]rior to the date of the [competency] hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted."  18 U.S.C. § 4241(b) (emphasis added).  "[A] psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner . . . ."  Id. § 4247(b).

Martinez-Haro contends that the use of the article "a" suggests that the statute only authorizes one competency examination.  Martinez-Haro suggests that the district court could have ordered a single examination to be conducted with multiple examiners but not two separate evaluations.  We find that argument unavailing.

We look first to the plain language of the statute, and if "the terms of the statute are clear and unambiguous, the inquiry ends and we simply give effect to the plain language of the statute."  United States v. Sprenger, 625 F.3d 1305, 1307 (10th Cir. 2010) (internal quotation marks omitted), cert. denied, 131 S. Ct. 1030 (2011).  The statute authorizes district courts to order competency hearings as need be.  The statute does not contain any language restricting a district court from ordering multiple hearings.  The statute does not state that the court may order only one psychiatric or psychological examination.  And the statute does not state that the court may order just a single

8

psychiatric or psychological examination. While the statute does not explicitly address the issue raised by Martinez-Haro, it does state that "if the court finds it appropriate, [then the court can order an examination] by more than one such examiner." 42 U.S.C. § 4247(b). Nothing in this language limits the second examiner to the initial examination of the defendant nor does the language restrict the ability of the court to order a second examination after the initial examination. Therefore, we refuse to read into the statute's language the restriction suggested by Martinez-Haro. Instead we read the statute to authorize a district court to order a second competency hearing when appropriate.

With that statutory framework in mind, we turn to the question of whether the district court abused its discretion by ordering a second competency examination. We would be concerned if a defendant was found incompetent and the district court then allowed the Government to conduct more competency examinations only for the purpose of "shopping" for a psychologist or psychiatrist who would conclude that the defendant was competent. But that is not the case before us.

Here there were legitimate reasons for the district court to order a second competency examination. Dr. O'Connor specifically recommended further testing in her conclusion: "If it were possible to have Mr. Martinez-Haro administered some psychological and neuropsychological testing in Spanish by a Spanish speaking neuropsychologist this may give the Court more complete information to base its opinion regarding competency on." (Aplt. App., vol. III at 7.) Further, Dr. O'Connor questioned

9

her own opinion and expressed a willingness to revise her conclusion based on further testing.

We cannot say that the district court abused its discretion by ensuring that it had sufficient information to evaluate Martinez-Haro's competency. In fact, based on Dr. O'Connor's statements, we conclude that in this case it would be prudent for the district court to order an additional competency examination. Therefore, the district court did not abuse its discretion by ordering a second competency examination.[2]

---

[2] Few courts have squarely addressed whether § 4241(b) authorizes multiple competency examinations, particularly when the result of the first competency examination is the conclusion that the defendant is incompetent to stand trial. But we found one persuasive authority that supports our conclusion. In United States v. Weston, a district court ordered a competency examination, and the conclusion of that examination was that the defendant was incompetent to stand trial. 36 F. Supp. 2d 7, 8–9 (D.D.C. 1999). The defendant objected to the Government's motion for a second competency examination, arguing that the district court did not "have the inherent authority to grant the government's motion [for a second competency examination] because 18 U.S.C. § 4241 et seq. and Fed. R. Crim. P[.] 12.2(c) empowers the court to order 'a' single psychological examination, but not more than one." Id. at 12. Like us, the court concluded that "[c]ontrary to the defendant's assertion, there are no statutory restrictions to the number of examinations the Court may order." Id.

Martinez-Haro attempts to distinguish Weston by pointing out that the Government in that case was dissatisfied with the original examination because the examiner failed to discuss the fact that the "defendant filed over half a dozen civil lawsuits" more than ten years before the defendant was charged in the pending case. Id. at 12–13. Martinez-Haro argues that the situation in Weston differs from this case because in Weston "the reason for the second evaluation was a problem with the original examiner." (Aplt. B. at 10.) But if anything this further supports our conclusion. In this case, there was a problem with the original examination: the examination was conducted through an interpreter instead of by a Spanish-speaking psychologist or psychiatrist. While we are not saying that there must be a problem with the first examination for a

Continued . . .

# III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court.

_____
Cont.

court to find that a second examination is warranted, this does show that the court's conclusion in <u>Weston</u> supports our conclusion in this case.

Finally, both parties also discuss <u>United States v. Zhou</u>, 428 F.3d 361 (2d Cir. 2005). But the issue raised in <u>Zhou</u> is inapposite to the issue presented by this case. <u>See id.</u> at 379–81 (addressing whether a district court abused its discretion by ordering that a second competency hearing be conducted by a psychologist from the Bureau of Prisons instead of a psychologist chosen by the defendant).

There are two types of cases that suggest the appropriateness of multiple competency hearings even though the cases do not squarely resolve the issue before us. First, there are cases that discuss the fact that a district court ordered multiple competency examinations. <u>See, e.g.</u>, <u>United States v. Chaudhry</u>, 630 F.3d 875, 876 (9th Cir. 2011) (explaining that the defendant underwent one competency examination at his own request and then a second at the government's request); <u>United States v. Stanley</u>, 396 F. App'x 482, 483 (10th Cir. 2010) (unpublished), <u>cert. denied</u>, 131 S. Ct. 1704 (2011) (stating that the defendant underwent one competency examination at the request of the government and then an additional competency examination at the request of his own counsel); <u>United States v. Byers</u>, 740 F.2d 1104, 1106–07 (D.C. Cir. 1984) (en banc) (plurality opinion) (noting that the defendant underwent the first competency examination at the request of defense counsel and the second upon the government's motion). Second, there are cases addressing whether a district court abused its discretion by failing to order a second competency examination. <u>See, e.g.</u>, <u>United States v. Sanchez-Ramirez</u>, 570 F.3d 75, 80–81 (1st Cir. 2009); <u>United States v. Andrews</u>, 469 F.3d 1113, 1121 (7th Cir. 2006); <u>United States v. Prince</u>, 938 F.2d 1092, 1094–95 (10th Cir. 1991) (all concluding that a district court did not abuse its discretion by failing to order an additional competency examination).

11