**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0081n.06

No. 16-4006

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

**FILED**
Feb 16, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| DEMIAN PINA, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before:  MERRITT, MOORE, and BUSH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Following a jury trial, Demian Pina was convicted of five counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and two counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4).  The district court sentenced Pina to 210 months' imprisonment, followed by twenty years' supervised release.  Pina now contests his conviction on three grounds.  First, he argues that his rights under the Speedy Trial Act and the Sixth Amendment were violated when the district court ordered a second mental-health evaluation prior to concluding its competency hearing.  Second, Pina asserts that the district court erred in following the Sixth Circuit Pattern Criminal Jury Instructions and instructing the jury that "any means or facility of interstate commerce includes the internet or telephone."  Lastly, he contests the district court's admission of country-of-origin labels, affixed to devices seized from his residence, for the purpose of proving the interstate nexus required for conviction under 18 U.S.C. § 2252(a)(2) and (a)(4).  For

the following reasons we reject all three of Pina's arguments, and **AFFIRM** Pina's conviction on all counts.

## I. BACKGROUND

### A. The Investigation

In November 2010, a member of the Ohio Internet Crimes Against Children Task Force ("Ohio ICAC") was investigating the distribution of child pornography through peer-to-peer file-sharing networks. R. 126 (Trial Tr. Day 1 at 147, 162) (Page ID #744, 759). The investigator identified an IP address that was sharing suspected child pornography; this suspicion was confirmed after the investigator downloaded the files and viewed them. *Id.* at 164 (Page ID #761). Ohio ICAC subsequently identified the IP address as belonging to Pina. *Id.* at 181 (Page ID #778).

The FBI searched Pina's residence in February 2011 and recovered multiple computers that Pina identified as his. R. 127 (Trial Tr. Day 2 at 7, 10–11) (Page ID #806, 809–10). A subsequent computer forensic examination of these devices found hundreds of files containing child pornography and hundreds more deleted files with names suggesting that they had contained child pornography. *Id.* at 72, 78 (Page ID #871, 877).

As the investigation progressed, Pina continued to distribute child pornography through peer-to-peer file-sharing networks. In November 2012, another Ohio ICAC agent identified Pina as the owner of an IP address sharing files of suspected child pornography. *Id.* at 119 (Page ID #918). And, again, in March 2013, investigators downloaded child pornography from Pina's IP

address on three separate occasions.  *Id.* at 155 (Page ID #954).  In June 2013, investigators seized two computers and an external hard drive from Pina's house.  *Id.* at 191–94 (Page ID #990–93).  A forensic examination of these items revealed that each contained child pornography.  *Id.* at 215–17 (Page ID #1014–16).

A federal grand jury indicted Pina with five counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and two counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4).  R. 5 (Indictment at 1–4) (Page ID #10–13).

## B. Pina's Competency to Stand Trial

On February 26, 2014, Pina made his initial appearance, and his answers during the hearing raised doubts about his competency.  R. 132 (Initial Appearance) (Page ID #1408–23). For example, in response to the magistrate judge's questions about whether he understood the charges against him, Pina said he did not.  *Id.* at 3 (Page ID #1410).  The magistrate judge also ordered him to provide his Social Security number to the U.S. Marshals Service—something Pina had refused to do when he was first arrested.  *Id.* at 6 (Page ID #1413).  Pina explained his refusal to do so: "I just wanted to make sure that my rights and my religious freedom would still be not broken as far as what you are saying you are forcing me to do something and I still have to answer to God for all of this."  *Id.* at 13 (Page ID #1420).  Pina also asked the magistrate judge what his rights were, after the magistrate judge had already explained them to him.  *Id.* at 2, 8 (Page ID #1409, 1415).  At the end of the hearing, the magistrate judge raised the issue of

whether Pina was competent to understand the proceedings against him. *Id.* at 13 (Page ID #1420).

The government filed a motion regarding Pina's competency to stand trial on April 1, 2014. R. 23 (Mot. Pursuant to 18 U.S.C. § 4241(a)) (Page ID #71–73). In response, the district court questioned Pina about his understanding of the legal process. R. 139 (April 29, 2014 Hr'g at 3–24) (Page ID #1553–63). The district court subsequently issued an order in which it stated that there was not currently reasonable cause to believe that Pina was incompetent, but it would continue to monitor his understanding of the proceedings against him. R. 30 (Order re Competency) (Page ID #88).

On August 11, 2014, the district court sua sponte raised the issue of Pina's competency, after Pina moved to represent himself. R. 136 (Hr'g re Mot. to Waive Right to Counsel at 14–15) (Page ID #1479–80); R. 37 (Mot. to Waive Right to Counsel) (Page ID #100–02). The district court decided to refer Pina to a psychologist and stated that it would use the mental-health evaluation to determine both Pina's competency to stand trial and whether Pina's waiver of his right to counsel was knowing and voluntary. *Id.* at 16, 21 (Page ID #1481, 1486); R. 38 (Or. re Mental-Health Evaluation at 1) (Page ID #103). Pina did not object to this evaluation or competency hearing. R. 38 (Or. re First Mental-Health Evaluation at 1) (Page ID #103).

Dr. De Marchis evaluated Pina on August 16, 2014. De Marchis reported that Pina was uncooperative during the evaluation and refused to answer basic background questions. When Pina did answer De Marchis's questions, he sometimes gave idiosyncratic answers; furthermore,

he repeatedly stated that he did not understand the charges against him. Of the two psychological tests that De Marchis conducted, one produced invalid results because of Pina's uncooperativeness. Nevertheless, De Marchis concluded that Pina was competent to stand trial.

On September 8, 2014, the district court held a hearing regarding Pina's competency to stand trial and his motion to waive his right to counsel. R. 140 (Competency Hr'g Pt. 1 at 2) (Page ID #1576). The government made an oral motion for a second mental-health evaluation, due to its concern that the first evaluation's results may have been inaccurate because of Pina's unwillingness to answer questions during his clinical interview. *Id.* at 3 (Page ID #1577). Pina objected. *Id.* at 4 (Page ID #1578). The district court agreed with the government, and ordered a second evaluation. *Id.*; R. 39 (Or. re Second Mental-Health Evaluation at 2) (Page ID #105).

The second mental-health evaluation, conducted by Dr. Kissin, occurred over a month-long period. Again, Pina did not cooperate with the evaluation process and refused to provide basic information about himself. But Dr. Kissin concluded that Pina's unusual behavior was due to his antagonism towards the government and not the result of a mental illness. Thus, Dr. Kissin concluded that Pina was competent to stand trial. After receiving this second evaluation, the district court held that Pina was competent to stand trial.[1] R. 124 (Competency Hr'g Pt. 2 at 3) (Page ID #561); R. 42 (Or. re Pina's Competency at 10) (Page ID #125).

Pina subsequently moved to dismiss the case against him for violations of the Speedy Trial Act and his Sixth Amendment speedy-trial right. R. 53 (Mot. to Dismiss at 3) (Page ID

---

[1]At this hearing, Pina withdrew his motion to waive his right to counsel. R. 124 (Competency Hr'g Pt. 2 at 5) (Page ID #563).

#284).  He argued that the delay in his trial caused by the second mental-health evaluation should not be excluded from the speedy-trial clock.  *Id.* at 4 (Page ID #285); R. 55 (Reply to Gov't Op. to Mot. to Dismiss at 1) (Page ID #290).  The district court denied Pina's motion on the basis that the second mental-health evaluation was necessary in order to determine Pina's competence.  R. 58 (Or. Denying Mot. to Dismiss at 1–2) (Page ID #325–26).  Furthermore, the district court noted that the speedy-trial clock had also been tolled by Pina's motion to suppress, which had been filed on July 10, 2014, but was not ruled upon until June 15, 2015.  *Id.* at 1. n.1 (referencing R. 34 (Mot. to Suppress) (Page ID #93–95) and R. 56 (Or. Denying Mot. to Suppress) (Page ID #292–303)).

**C.  Government Evidence at Trial Showing an Interstate Nexus**

At trial, the government needed to prove an interstate nexus for each of the seven counts.  To do so, the government introduced several different categories of evidence.  First, multiple investigators testified that they had used the internet to access Pina's computer via a peer-to-peer file-sharing network and that anyone who used this network could download the child pornography Pina was sharing.  R. 126 (Trial Tr. Day 1 at 151–52, 155) (Page ID #748–49, 752); R. 127 (Trial Tr. Day 2 at 107, 121, 149) (Page ID #906, 920, 948).  Second, computer forensic analysts who had examined the electronic devices seized in 2011 and 2013 found that the child pornography contained in those devices had been obtained via a peer-to-peer file-sharing network.  R. 127 (Trial Tr. Day 2 at 60–70, 75–78, 99) (Page ID #859–69, 874–77, 898); R. 128 (Trial Tr. Day 3 at 14, 36–40, 46–50, 67–98) (Page ID #1035, 1057–61, 1067–71, 1088–89).

Third, investigators testified about the manufacturing origin of the electronic devices seized. The expert computer forensic analyst who examined the devices seized in 2011 testified that to the best of his knowledge the devices were manufactured outside of the United States. R. 127 (Trial Tr. Day 2 at 42–46) (Page ID #441–43). Another government witness read into evidence the country-of-origin labels from the devices seized in 2013; each of these labels stated that the device was made outside of the United States. *Id.* at 195–99 (Page ID #994–98). The defendant had initially objected to this testimony as hearsay when the government had asked the witness: "Are you able to tell from the outside of those exhibits where they were manufactured or produced?" *Id.* at 195–96 (Page ID #994–95). The government then rephrased the question and asked the witness to read the labels; the defendant did not object to the rephrased question. *Id.* at 197–99 (Page ID #996–98). In an order issued after the trial's conclusion, the district court clarified that the country-of-origin labels were hearsay, but they were admissible under the residual exception in Federal Rule of Evidence 807. R. 77 (Or. Memorializing Hearsay Ruling at 4, 7) (Page ID #368, 371). Pina made no argument contesting the applicability of the residual exception in front of the district court. *Id.* at 5–6 (Page ID #369–70).

Finally, one of the FBI agents who had worked on the investigation testified that she had submitted the images that had been discovered in Pina's home to the National Center for Missing and Exploited Children ("NCMEC"). R. 129 (Trial Tr. Day 4 at 30) (Page ID #1268). The agent explained that the NCMEC will identify any images belonging to a known series of child pornography and provide the name of the original investigating agency that identified the child in

the picture. *Id.* The original investigating agency is located where the initial crime against the child occurred. *Id.* According to the FBI agent, approximately thirty-five of the files they submitted to the NCMEC belonged to identified series and the investigating agencies were located, among other places, in Brazil, the United Kingdom, Germany, Switzerland, Wisconsin, and California. *Id.* at 31 (Page ID #1269).

## II. DISCUSSION

### A. Speedy-Trial Rights

Pina argues that the delay in his trial caused by the second mental-health evaluation—the 115-day period between October 6, 2014, and January 29, 2015—violated his rights under the Speedy Trial Act and the Sixth Amendment. Appellant Br. at 8. Pina moved to dismiss the case against him on these grounds, R. 53 (Mot. to Dismiss at 3) (Page ID #284), but the district court denied his motion, R. 58 (Or. Denying Mot. to Dismiss at 1) (Page ID #325).

We review a district court's denial of a defendant's motion to dismiss under the Speedy Trial Act or the Sixth Amendment using the same standard of review: questions of law are reviewed de novo, and questions of fact are reviewed for clear error. *United States v. Sobh*, 571 F.3d 600, 602 (6th Cir. 2009); *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007).

### 1. The Speedy Trial Act

"The Speedy Trial Act of 1974 (Speedy Trial Act or Act), 18 U.S.C. § 3161 *et seq.,* requires that a criminal defendant's trial commence within 70 days after he is charged or makes an initial appearance, whichever is later, see § 3161(c)(1), and entitles him to dismissal of the

charges if that deadline is not met, § 3162(a)(2)." *Bloate v. United States*, 559 U.S. 196, 198–99 (2010). For a violation of the Speedy Trial Act, the indictment may be dismissed with or without prejudice. *United States v. Sutton*, 862 F.3d 547, 554 (6th Cir. 2017) (citing 18 U.S.C. § 3162). "The Act, however, excludes from the 70–day period delays due to certain enumerated events." *Bloate*, 559 U.S. at 199 (citing 18 U.S.C. § 3161(h)).

"[O]nce a defendant makes a *prima facie* showing that more than 70 days have passed, the government bears the burden of proving sufficient excludable time by a preponderance of the evidence." *Sobh*, 571 F.3d at 602. Here, 482 days passed from Pina's initial appearance on February 26, 2014, to the beginning of his trial on June 22, 2015. R. 132 (Initial Appearance) (Page ID #1408–23); R. 126 (Trial Tr. Day 1) (Page ID #598–799). Thus, Pina has made a prima facie showing that more than seventy days passed. Pina concedes, however, that his claim hinges entirely on whether the 115-day delay caused by the second mental-health evaluation is excluded from the Act's computation of time. Appellant Br. at 12–13. In other words, Pina concedes that the government can show that there is sufficient excludable time such that the Speedy Trial Act was not violated if this 115-day delay is excludable.

"[D]elay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant" is excluded from the computation of time under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(A). Pina makes a two-step argument for why this provision does not fatally preclude his claim. We must accept both steps in order for Pina to prevail. First, he argues that the district court abused its discretion when it ordered

the second mental-health evaluation. Appellant Br. at 12–21. Second, Pina argues that we should import the reasonable-cause standard in 18 U.S.C. § 4241(a), which governs when the district court should order a competency hearing, into 18 U.S.C. § 3161(h)(1)(A) so that if the district court did not have reasonable cause to order a hearing, then any delay caused by a mental-health evaluation conducted in order to facilitate this hearing should not be excludable from the time computation of the Speedy Trial Act.[2] Appellant Br. at 21–25.

"This Court reviews the determination of whether there is reasonable cause to question a defendant's competence and to grant a competency hearing under an abuse of discretion standard." *United States v. Ross*, 703 F.3d 856, 867 (6th Cir. 2012). Upon a motion by the defendant or the government for a competency hearing:

> [t]he court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a). Prior to this hearing, "the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247 (b) and (c)." 18 U.S.C. § 4241(b). "A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, *if the court finds it appropriate, by more than one such examiner*." 18 U.S.C. § 4247(b) (emphasis added).

---

[2]*See* note 3 *infra*.

Pina does not contest the district court's initial decision to order a competency hearing and the first mental-health evaluation to facilitate a determination of his competency at that hearing. Rather, Pina argues that the district court abused its discretion by ordering a second mental-health evaluation prior to the conclusion of his competency hearing because it "arbitrarily disregarded the first competency evaluation."[3] Appellant Br. at 17.

The district court has the authority to order a second mental-health evaluation "if the court finds it appropriate." 18 U.S.C. § 4247(b). During the first evaluation, conducted by De Marchis, Pina was uncooperative. He stated that he did not understand the charges against him. Furthermore, of the two psychological tests that De Marchis conducted, one produced invalid results. Thus, despite De Marchis's opinion that Pina was competent, the issues that arose during the evaluation made it appropriate for the district court to order a second mental-health evaluation before it concluded its competency hearing. *See United States v. Martinez-Haro*, 645 F.3d 1228, 1233 (10th Cir. 2011) (holding that it was not an abuse of discretion for a district court to order a second mental-health evaluation when the first evaluation was hampered by a language barrier and there was no evidence that the government was "shopping" for an evaluator who would opine that the defendant was competent); *cf. Drope v. Missouri*, 420 U.S. 162, 181

---

[3]Pina elides the difference between a mental-health evaluation and a competency hearing in his argument. In this case, the district court did not make a determination as to Pina's competency to stand trial until after the court had the results of both evaluations. R. 124 (Competency Hr'g Pt. 2 at 3) (Page ID #561); R. 42 (Or. re Pina's Competency at 10) (Page ID #125). This makes Pina's argument that there must be evidence of a change in Pina's competency between the first and second evaluation inapposite because the district court had not yet determined Pina's competency when the second evaluation was ordered. Appellant Br. at 17–21.

11

(1975) (recognizing that competency may change during trial).  The district court acted to protect Pina's interests; it did not abuse its discretion in doing so.

Because Pina cannot prevail on the first part of his two-step argument, we need not address the second part:  that we should import 18 U.S.C. §§ 4241(a) and 4247(b) into 18 U.S.C. § 3161(h)(1)(A).  Consequently, we reject Pina's argument that his rights under the Speedy Trial Act were violated because the district court did not abuse its discretion in ordering the second mental-health evaluation, and therefore the 115-day delay resulting from this second evaluation is excludable from the Speedy Trial Act's time computation.

## 2.  Sixth Amendment Speedy-Trial Right

Pina also argues that his speedy-trial rights under the Sixth Amendment were violated. Appellant Br. at 9.  The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  U.S. CONST. amend. VI.  "The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished."  *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017).  "The remedy for a Sixth Amendment speedy-trial violation is dismissal with prejudice."  *Sutton*, 862 F.3d at 554.

The Supreme Court has articulated a four-factor test for evaluating a defendant's Sixth Amendment speedy-trial claim:  "(1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant."  *United States v. Brown*,

498 F.3d 523, 530 (6th Cir. 2007) (citing *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972)). "None of the factors is 'a necessary or a sufficient condition to the finding of a deprivation of the right of speedy trial,' but the factors are related and 'must be considered with such other circumstances as may be relevant' in 'a difficult and sensitive balancing process.'" *United States v. Young*, 657 F.3d 408, 414 (6th Cir. 2011) (quoting *Barker*, 407 U.S. at 533).

"The first *Barker* factor—the length of delay—serves as a threshold or 'triggering mechanism' for a speedy-trial analysis." *Id.* (quoting *Barker*, 407 U.S. at 530). "That is, if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors." *Gardner*, 488 F.3d at 719. A delay is "presumptively prejudicial" if it "approaches one year." *Id.* Unlike the Speedy Trial Act, the Sixth Amendment time calculation begins "when the defendant is arrested or indicted, whichever is earlier." *Romanowski*, 845 F.3d at 712–13. Pina was indicted on February 25, 2014. R. 5 (Indictment at 1) (Page ID #10). His trial began on June 22, 2015. R. 126 (Trial Tr. Day 1 at 2) (Page ID #599). Thus, Pina suffered a delay of 483 days, which is "presumptively prejudicial."

In assessing the second *Barker* factor, "the court considers who is most at fault" for the delay: "the government or the defendant." *Romanowski*, 845 F.3d at 714. "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government." *United States v. Ferreira*, 665 F.3d 701, 705–06 (6th Cir. 2011) (quoting *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir.

13

2006)).   Pina contests only the 115-day delay caused by the second mental-health evaluation, Appellant Br. at 10, presumably because the remainder of the delay is mostly attributable to pre-trial motions Pina made or continuances that he requested.   *Young*, 657 F.3d at 415 ("When a party makes motions, it cannot use the delay caused by those motions as a basis for a speedy-trial claim."); *see, e.g.*, R. 29 (Or. re First Def. Mot. to Continue) (Page ID #87); R. 32 (Second Def. Mot. to Continue) (Page ID #90–92).   But the reason behind this delay weighs in favor of the government.   The government had a valid reason to ensure that the defendant was competent to stand trial.   *Drope*, 420 U.S. at 172 ("[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial."); *cf. United States v. Murphy,* 241 F.3d 447, 454 (6th Cir. 2001) (holding, in the context of a Speedy Trial Act claim, that "a defendant may not complain of delays occasioned by the trial court's attempt to protect his interests").

The government does not contest that the third *Baker*—whether the defendant asserted his speedy-trial right—weighs in favor of Pina.   Appellee Br. at 25–26.   Pina moved the district court to dismiss the case against him for violations of his Sixth Amendment speedy-trial right. R. 53 (Mot. to Dismiss at 3) (Page ID #284).

The final *Barker* factor "requires a defendant to show that substantial prejudice has resulted from the delay."   *Ferreira*, 665 F.3d at 706 (internal citation and quotation marks omitted).   "The prejudice prong exists to protect three interests: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the

14

possibility that the defense will be impaired.'" *Young*, 657 F.3d at 418 (quoting *Barker*, 407 U.S. at 532). The last interest is the most important. *Id.* Pina argues that the extension of his pretrial incarceration due to the second mental-health evaluation fostered his distrust in the government, causing him to reject the multiple plea offers the government made.[4] Appellant Br. at 11. Any post-trial regret Pina has at turning down all three plea offers extended by the government, however, is not prejudice attributable to the delay. Pina's distrust of the government existed prior to his second mental-health evaluation. And Pina rejected the first, and most favorable, plea offer in June 2014, before the district court had even ordered the first mental-health evaluation. R. 125 (Best Case/Worst Case Hr'g Tr. at 17) (Page ID #594).

After considering the *Barker* factors, we hold that the government did not violate Pina's Sixth Amendment right to a speedy trial. Although the delay between Pina's indictment and trial was nearly sixteen months, much of this delay is attributable to Pina's pretrial motions and motions for continuances. Furthermore, the portion of the delay for which the government is to blame weighs in favor of the government because it was seeking to protect Pina's constitutional rights. Finally, Pina cannot articulate any prejudice arising from this delay.

---

[4]Pina argues in passing that the length of delay is presumptively prejudicial. Appellant Br. at 11. We have previously held, however, that a two-year delay is not so extraordinarily long as to entitle a defendant to relief in the absence of proof of actual prejudice. *United States v. Jackson*, 473 F.3d 660, 668 (6th Cir. 2007). Thus a delay of less than two years, as occurred here, cannot be used to satisfy presumptively this fourth factor.

## B. Jury Instruction

For both the distribution and possession counts, the government was required to prove an interstate nexus. For the five counts of distribution, the government had to prove that the visual depictions were distributed:

> using *any means or facility of interstate or foreign commerce* or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using *any means or facility of interstate or foreign commerce* or in or affecting interstate or foreign commerce or through the mails . . . .

18 U.S.C. § 2252(a)(2) (emphasis added). Similarly, for the two counts of possession, the government had to prove that the matter containing the visual depiction:

> has been mailed, or has been shipped or transported using *any means or facility of interstate or foreign commerce* or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer . . . .

18 U.S.C. § 2252(a)(4)(B) (emphasis added). Following the Sixth Circuit Pattern Criminal Jury Instructions, the district court stated that: "The term means or facility of interstate commerce includes the internet or telephone." R. 129 (Trial Tr. Day 4 at 78) (Page ID #1316); Sixth Circuit Pattern Criminal Jury Instructions, §§ 16.04 & 16.06 (2017). Pina argues that this definition is erroneous. Appellant Br. at 41.

Because Pina did not object in the district court to the jury instructions, R. 129 (Trial Tr. Day 4 at 62, 82, 98) (Page ID #1300, 1320, 1336), we review his claim for plain error. *United States v. Castano*, 543 F.3d 826, 833 (6th Cir. 2008). Plain-error review "involves four steps, or

prongs:" (1) "there must be an error or defect"; (2) "the legal error must be clear or obvious"; (3) "the error must have affected the appellant's substantial rights"; and (4) if the "first three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (alteration in original) (internal citations and quotation marks omitted). The third prong—that the error affected the defendant's substantial rights—"in most cases [] means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). "In the context of challenges to jury instructions, '[p]lain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice.'" *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006) (alteration in original) (quoting *United States v. Combs*, 33 F.3d 667, 669 (6th Cir. 1994)).

The district court's instruction complies with the law of this circuit. *United States v. Napier*, 787 F.3d 333, 346–47 (6th Cir. 2015) (recognizing that the structure of the internet means that transmitting an image via the internet necessarily implicates interstate transportation); *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999) ("It is well established that telephones, even when used intrastate, constitute instrumentalities *of* interstate commerce."); *United States v. Fuller*, 77 F. App'x 371, 379 (6th Cir. 2003) (holding that "both the Internet and the telephone[] [are] facilities or means of interstate commerce"); *see also United States v.*

*Thomas*, 74 F.3d 701, 706–10 (6th Cir. 1996) (holding that the interstate commerce element in 18 U.S.C. § 1465 was satisfied when pornographic material was sent via the internet). And we are not alone in considering the use of the internet to be inextricably linked to interstate commerce. *See, e.g.*, *United States v. Hilton*, 257 F.3d 50, 54 (1st Cir. 2001); *United States v. Harris*, 548 F. App'x 679, 682 (2d Cir. 2013); *United States v. Macewan*, 445 F.3d 237, 244–45 (3d Cir. 2006); *United States v. White*, 2 F. App'x 295, 298 (4th Cir. 2001); *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002); *United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007); *United States v. Giboney*, 863 F.3d 1022, 1026 (8th Cir. 2017).

Pina relies on a Tenth Circuit decision to argue that the district court's instruction was plainly erroneous. Appellant Br. at 43; Appellant Reply Br. at 20. In *United States v. Schaefer*, 501 F.3d 1197, 1201 (10th Cir. 2007), *superseded by* Effective Child Pornography Prosecution Act of 2008, Pub. L. No. 110-358 (Oct. 8, 2008), *and overruled in part by United States v. Sturm*, 672 F.3d 891 (10th Cir. 2012) (en banc), the Tenth Circuit held that mere use of the internet does not equate to movement across state lines. This case is unpersuasive for a few reasons, but most importantly it is inapposite to Pina's case because the Tenth Circuit was interpreting an earlier version of 18 U.S.C. § 2252(a) (2006), in which the language "any means or facility of interstate commerce" was not present. The "narrow proposition for which *Schaefer* still stands" is that the use of the internet does not automatically mean that something was transmitted interstate. *United States v. Kieffer*, 681 F.3d 1143, 1155 (10th Cir. 2012). *Schaefer* is silent as to whether the internet is a "means or facility of interstate commerce."

18

Because the district court's instruction is amply supported by our caselaw, Pina failed to establish the first two prongs of plain-error review: that the district court erred in a manner that was clear and obvious. Thus, we reject his challenge to this jury instruction.

## C. Country-of-Origin Labels

Pina argues that the district court erred by admitting the country-of-origin labels, affixed to the electronic devices seized in 2013, for the purpose of proving that these devices were manufactured outside of Ohio. Appellant Br. at 26.

The parties disagree over the applicable standard of review. Appellant Br. at 26; Appellee Br. at 32. If Pina objected to the introduction of these labels below, we would review the district court's evidentiary rulings for abuse of discretion.[5] *United States v. Morales*, 687 F.3d 697, 701–02 (6th Cir. 2012). "In addition, 'reversal is appropriate only if the abuse of discretion was not harmless error, that is, only if the erroneous evidentiary ruling affected the outcome of the trial.'" *Id.* at 702 (quoting *United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011)). On the other hand, if Pina failed to object, we would review under a plain-error standard. *Id.* at 701. The parties contest whether Pina objected to the introduction of these country-of-origin labels. Appellant Br. at 26; Appellee Br. at 32; *see* Section I.C *supra*. Any error arising from the admittance of these labels, however, is harmless; thus, we need not decide

---

[5]Pina argues that we should review the district court's decision to admit this evidence de novo. Appellant Br. at 26. While we review "*de novo* the [district] court's conclusions of law and review[] for clear error the court's factual determinations that underpin its legal conclusions," we review the district court's evidentiary ruling for abuse of discretion. *United States v. Geisen*, 612 F.3d 471, 495 (6th Cir. 2010) (alterations in original). We have held "that these two standards of review are not in conflict, as it is an abuse of discretion to make errors of law or clear errors of factual determination in evidentiary rulings." *Id.* (internal citation and quotation marks omitted).

whether Pina properly objected at trial because the controlling standard of review will not change the outcome.

Assuming arguendo that the district court abused its discretion by admitting the country-of-origin labels, this error is harmless. *Morales*, 687 F.3d at 702. In order to prove that Pina violated 18 U.S.C. § 2252(a)(2) and (a)(4), the government needed to demonstrate an interstate nexus. As described in detail in Section I.C, the government introduced ample evidence of this required nexus besides the country-of-origin labels affixed to the devices seized in 2013. The child pornography had been downloaded via the internet, through a peer-to-peer file-sharing network. R. 128 (Trial Tr. Day 3 at 14, 36–40, 46–50, 67–98) (Page ID #1035, 1057–61. 1067–71, 1088–89). And the internet is a "means or facility of interstate commerce." *See* Section II.B *supra*. Additionally, the government offered undisputed evidence that some of the child pornography recovered was produced outside of Ohio, thus allowing the jury to draw the reasonable inference that this child pornography must have travelled across state lines. R. 129 (Trial Tr. Day 4 at 30–31) (Page ID #1268–69). Finally, the expert computer forensic analyst who examined the devices seized in 2011 testified, without objection, that the devices were manufactured outside of the United States. R. 127 (Trial Tr. Day 2 at 42–46) (Page ID #441–43).

Any error arising from the admission of the country-of-origin labels was harmless because of the multiplicity of other evidence demonstrating an interstate nexus. Thus, we reject Pina's challenge to his conviction based on the introduction of this evidence.

## III. CONCLUSION

For the foregoing reasons we reject all three of Pina's arguments as to why his conviction should be reversed. Pina's rights under the Speedy Trial Act and the Sixth Amendment were not violated when the district court ordered a second mental-health evaluation prior to determining Pina's competency to stand trial because there were legitimate doubts about the accuracy of the first evaluation. Additionally, the district court did not plainly err by using the Sixth Circuit Pattern Criminal Jury Instructions and instructing the jury that "any means or facility of interstate commerce includes the internet or telephone." Finally, assuming arguendo that the district court erred by admitting the country-of-origin labels affixed to the devices seized from Pina's residence in 2013 for the purposes of showing an interstate nexus, this was harmless error. Therefore, we **AFFIRM** Pina's conviction on all counts.